DURIE TANGRI LLP
BENJAMIN B. AU (SBN 237854)
bau@durietangri.com
953 East 3rd Street
Los Angeles, CA 90013
Telephone: 213-992-4499
Facsimile: 415-236-6300

GALIA Z. AMRAM (SBN 250551)
gamram@durietangri.com
RAGHAV R. KRISHNAPRIYAN (SBN 273411)
rkrishnapriyan@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Facsimile: 415-236-6300

Attorneys for Defendant SUBHASH JAY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

SUBHASH JAY,

Defendant.

Case No. 3:17-CR-00176-CRB-1

**DEFENDANT SUBHASH JAY'S EMERGENCY NOTICE OF MOTION AND MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I) (COMPASSIONATE RELEASE)**

Date: July 15, 2020
Time: 1:30 p.m.
Ctrm: 6–17th Floor
Judge: Honorable Charles R. Breyer

**REDACTED VERSION**

TO THE HONORABLE COURT AND COUNSEL FOR THE GOVERNMENT:

PLEASE TAKE NOTICE that on July 15, 2020 at 1:30 p.m. or at a time set by the Court as soon as practicable given the emergency nature of this motion, via telephone or videoconference in the above-referenced Court, Subhash Jay ("Mr. Jay" or "Defendant"), by and through his attorneys, will move this Honorable Court, for an order reducing in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release).

This Motion is made on this Notice, the following Memorandum of Points and Authorities, the attached declarations, the papers and pleadings on file herein, and on such additional papers and arguments as may be presented at or before the hearing on this matter.

Dated: June 5, 2020

Respectfully submitted,

DURIE TANGRI LLP

By: *~~/s/ Benjamin B. Au~~*

BENJAMIN B. AU
GALIA Z. AMRAM
RAGHAV K. KRISHNAPRIYAN

Attorneys for Defendant SUBHASH JAY

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................1

II. BACKGROUND ....................................................................................................1

A. Procedural Background....................................................................................1

B. Mr. Jay Suffers from a Number of Serious Health Conditions..........................2

C. COVID-19 Has Devastated the Prison System..................................................3

III. ARGUMENT.........................................................................................................4

A. The COVID-19 Pandemic and Mr. Jay's Risk Factors Constitute "Extraordinary and Compelling" Circumstances "Warrant[ing] Immediate Release from Custody" .........5

B. With Full Consideration of the § 3553(A) Factors, Including the COVID-19 Pandemic, Mr. Jay's Time Served Constitutes a Sentence Sufficient, But Not Greater Than Necessary, to Accomplish the Goals of Sentencing. ....................................7

1. "Sufficient but not greater than necessary" and "reflect the seriousness of the offense, … promote respect for the law, and … provide just punishment for the offense." ..........................................................................8

2. "Adequate deterrence" and "protect[ing] the public"..........................................9

3. "Needed medical care, or other correctional treatment"......................................9

C. Both The Number of Tested Cases in Mr. Jay's Facility and Mr. Jay's Immigration Status are Immaterial ...............................................................10

IV. CONCLUSION......................................................................................................12

i

DEFENDANT'S EMERGENCY NOTICE OF MOTION AND MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I) / CASE NO. 3:17-CR-00176-CRB-1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Al-Jumail*,
No. 12-20272, 2020 WL 2395224 (E.D. Mich. May 12, 2020) ....................11

*United States v. Amarrah*,
No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) ....................11

*United States v. Ardila*,
No. 3:03-cr-264 (SRU), 2020 WL 2097736 (D. Conn. May 1, 2020)....................6, 11

*United States v. Asaro*,
No. 17-CR-127 (ARR), 2020 WL 1899221 (E.D.N.Y. April 17, 2020) ....................11

*United States v. Atkinson*,
No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585 (D. Nev. Apr. 17, 2020) ....................11

*United States v. Ben-Yhwh*,
No. CR 15-00830 LEK, 2020 WL 1874125 (D. Haw. Apr. 13, 2020)....................11

*United States v. Bennett*,
No. 05 CR. 1192-1 (NRB), 2020 WL 2539077 (S.D.N.Y. May 18, 2020) ....................12

*United States v. Burrill*,
No. 17-CR-00491-RS-1, 2020 WL 1846788 (N.D. Cal. Apr. 10, 2020)....................*passim*

*United States v. Connell*,
No. 18-cr-00281, 2020 WL 2315858 (N.D. Cal. May 8, 2020) ....................6

*United States v. Foreman*,
No. 3:19-cr-62 (VAB) 2020 WL 2315908 (D. Conn. May 11, 2020) ....................6

*United States v. Howard*,
No. 4:15-CR-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020)....................6

*United States v. Hunt*,
No. 18-20037, 2020 WL 2395222 (E.D. Mich. May 12, 2020) ....................6

*United States v. Jaime*,
235 F. Supp. 3d 262 (D.D.C. 2017)....................8

*United States v. Joling*,
No. 6:11-CR-60131-AA, 2020 WL 1903280 (D. Or. Apr. 17, 2020) ....................6

*United States v. Lacy*,
No. 15-cr-30038, 2020 WL 2093363 (C.D. Ill. May 1, 2020) ....................6

*United States v. Mel*,
No. CR TDC-18-0571, 2020 WL 2041674 (D. Md. Apr. 28, 2020) .......................................................8

*United States v. Morrison*,
No. 18-cr-00238-CRB-1, Dkt. No 72 (N.D. Cal. Apr. 29, 2020) .......................................................5

*United States v. Osorto*,
No. 19-CR-00381-CRB-4, 2020 WL 2323038 (N.D. Cal. May 11, 2020) ..........................................7

*United States v. Park*,
No. 16-CR-473 (RA), 2020 WL 1970603 (S.D.N.Y. Apr. 24, 2020) ..................................................8

*United States v. Quintero*,
No. 08-CR-6007L, --- F.Supp.3d ----, 2020 WL 2175171 (W.D.N.Y. May 6, 2020)...........................6

*United States v. Reid*,
No. 17-CR-00175-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020) .......................................5, 6

*United States v. Rodriguez*,
No. 2:03-CR-1627337, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) .....................................................8

*United States v. Sarkisyan*,
No. 15-CR-00234-CRB-15, 2020 WL 2542032 (N.D. Cal. May 19, 2020) ...............................5, 8, 10

*United States v. Simpson*,
No. 11-CR-00832-SI-3, 2020 WL 2323055 (N.D. Cal. May 11, 2020)................................................6

*United States v. Tran*,
No. CR 08-00197-DOC, 2020 WL 1820520 (C.D. Cal. Apr. 10, 2020)................................................8

*United States v. Trent*,
No. 16-CR-00178-CRB-1, 2020 WL 1812242 (N.D. Cal. Apr. 9, 2020)..............................................5

*United States v. Ullings*,
No. 1:10-cr-00406, 2020 WL 2394096 (N.D. Ga. May 12, 2020) .......................................................6

*United States v. Vo*,
No. 15-cr-00310-BLF-2, Dkt. 207, 2020 WL 2300101 (N.D. Cal. May 7, 2020) ...............................6

*United States v. Washington*,
No. 2:07-cr-258, Dkt. No. 529 (E.D. Pa. May 14, 2020)......................................................................11

*United States v. York*,
3:12-CR-145, 2019 WL 3241166 (E.D. Tenn. July 18, 2019) ...........................................................6

*United States v. York*,
No. 3:11-CR-76, 2019 WL 3241166 (E.D. Tenn. July 18, 2019) ........................................................6

*United States v. Zukerman*,
No. 16-CR.-194 (AT), --- F.Supp.3d ----, 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020)........................6

**Statutes**

18 U.S.C. § 1960 ........................................................................................................1

18 U.S.C. § 3282(c) ....................................................................................................1

18 U.S.C. § 3553(a) ....................................................................................................7

18 U.S.C. § 3553(a) ....................................................................................... 4, 7, 8

18 U.S.C. § 3582(c) .................................................................................. 4, 5, 7, 12

18 U.S.C. § 4205(g) ..................................................................................................12

26 U.S.C. § 7206 ........................................................................................................1

U.S.S.G. § 1B1.13 .............................................................................................. 5, 11

**Other Authorities**

CDC, *Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last visited May 30, 2020) ............................7

CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (March 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf ..........................................................................................4

CDC, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 30, 2020) .............................................................. 5, 6

Maxine Bernstein, *Federal Bureau of Prisons not tracking coronavirus cases in privately-run prisons that house 28,000 federal inmates*, The Oregonian (May 1, 2020) ...............3

Ryan Lucas, *'They're All Really Afraid': Coronavirus Spreads In Federal Prisons*, NPR (Apr. 7, 2020), https://www.npr.org/2020/04/07/828319691/they-re-all-really-afraid-coronavirus-spreads-in-federal-prisons)); ..................................................................10

Sadie Gurman, *More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus*, The Wall Street Journal (Apr. 30, 2020) ..................................................................10

U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf .......................................9

iv

DEFENDANT'S EMERGENCY NOTICE OF MOTION AND MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I) / CASE NO. 3:17-CR-00176-CRB-1

## I. INTRODUCTION

Subhash Jay is 61 years old and suffers from [redacted] He is a first-time, nonviolent offender with an exemplary record of good behavior in prison. His current release date, absent a further order of the Court, would be January 27, 2021. As of the filing of this motion, he has served nearly 18 months out of his 30-month sentence—over 70% of his sentence after accounting for good time credits.

On May 6, 2020, counsel on Mr. Jay's behalf petitioned the warden for compassionate release pursuant to 18 U.S.C. § 3282(c)(1)(A), on the basis that his health conditions place him at "high risk" of severe illness or death from COVID-19. The warden notified Mr. Jay of his denial of that request the following Monday, May 11, 2020. Mr. Jay's appeal of that decision is pending, but because 30 days have passed since the warden received his request, his administrative remedies are exhausted.

In light of his vulnerability to COVID-19 due to his health conditions, Mr. Jay respectfully moves this Court for immediate compassionate release. Mr. Jay's pre-existing medical conditions, combined with the exponential spread of this disease through the federal prison system, present extraordinary and compelling circumstances that justify granting this motion.

## II. BACKGROUND

### A. Procedural Background

Mr. Jay pled guilty on March 23, 2018, to one count of filing false tax returns under 26 U.S.C. § 7206 and one count of operating an unlicensed money transmitting business under 18 U.S.C. § 1960. *See* Declaration of Benjamin Au submitted herewith ("Au Decl.") ¶ 2a; *id.* Ex. A, *USA v. Jay* Docket. On September 5, 2018, this Court sentenced Mr. Jay to 30 months' imprisonment, three years of supervised release, a special assessment of $200, and restitution of $409,871 to the Internal Revenue Service. *See* Au Decl. Ex. B, ECF No. 40 in *USA v. Jay*. He is currently housed at the Giles W. Dalby Correctional Facility in Post, Texas, and is due to be released on January 27, 2021, approximately seven-and-a-half months from now, after having served approximately 18 months of his sentence. *See* Au Decl. Ex. C, BOP Inmate Registry Entry for S. Jay. Mr. Jay has no other criminal history other than the offenses that gave rise to his current prison term, and has had no disciplinary violations while imprisoned. *See* Declaration of Subhash Jay submitted herewith ("Jay Decl.") ¶¶ 2, 3.

Mr. Jay submitted a written request to the warden of his prison asking the Bureau of Prisons to file a motion for his compassionate release on May 6, 2020, and submitted additional information regarding his proposed release plan on May 11, 2020. *See* Au Decl. Ex. D, May 6, 2020 Request for Compassionate Release; *id.* Ex. E, May 11, 2020 Follow-up Request. In a letter dated May 11, 2020, the warden acknowledged that Mr. Jay "ha[s] been diagnosed with or suffer[s] from various medical conditions that could possibly cause [him] to be more susceptible to contracting the coronavirus," but denied his request on the purported basis that there is an unresolved immigration detainer pending against Mr. Jay and because he is not a citizen or national of the United States. *See* Au Decl. Ex. F, Warden Friend's Compassionate Release Review Ltr. at 3. Mr. Jay—who is a citizen of the United Kingdom, has lived in the United States since 1990, and is a lawful permanent resident—has no record of receiving such a detainer, and we cannot confirm whether it exists. *See* Au Decl. ¶¶ 2b, 3.

**B. Mr. Jay Suffers from a Number of Serious Health Conditions.**

Mr. Jay presently suffers from and is treated for a number of serious medical conditions, including [redacted]

These issues have worsened during Mr. Jay's time in prison. [redacted]

2

DEFENDANT'S EMERGENCY NOTICE OF MOTION AND MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I) / CASE NO. 3:17-CR-00176-CRB-1

**C. COVID-19 Has Devastated the Prison System.**

"The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *See United States v. Burrill*, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *2 (N.D. Cal. Apr. 10, 2020) (citations omitted).

The COVID-19 pandemic has already claimed the lives of many housed in BOP facilities. As of June 4, 2020, at least 75 federal inmates have died of COVID-19. *See* Au Decl. Ex. G, Fed. BOP COVID-19 website. These numbers are very likely understated, because they do not include inmates in private prisons like the one that houses Mr. Jay. *See* Maxine Bernstein, *Federal Bureau of Prisons not tracking coronavirus cases in privately-run prisons that house 28,000 federal inmates*, The Oregonian (May 1, 2020), https://www.oregonlive.com/coronavirus/2020/05/federal-bureau-of-prisons-not-tracking-coronavirus-cases-in-privately-run-prisons-that-house-28000-federal-inmates.html. Even more worrying than the sheer number of deaths and cases is the trend—the slope of COVID-19 deaths remains high even as it has flattened in the U.S. population at large:[1]

[1] Chart compiled by Rachel Bass based on figures from https://www.bop.gov/coronavirus/.

The CDC has explained that incarcerated inmates, who by definition are housed with numerous others, are at increased risk. *See* CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (March 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf. Inmates "live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced," and "options for medical isolation of COVID-19 cases are limited." *Id.* at 2. Moreover:

> There are many opportunities for COVID-19 to be introduced into a correctional or detention facility, including daily staff ingress and egress; transfer of incarcerated/detained persons between facilities and systems, to court appearances, and to outside medical visits; and visits from family, legal representatives, and other community members. Some settings, particularly jails and detention centers, have high turnover, admitting new entrants daily who may have been exposed to COVID-19 in the surrounding community or other regions.
>
> Persons incarcerated/detained in a particular facility often come from a variety of locations, increasing the potential to introduce COVID-19 from different geographic areas.

*Id.*

## III. ARGUMENT

Mr. Jay should be released pursuant to 18 U.S.C. § 3582(c)(1)(A). Under Section 3582(c), a court may modify a term of imprisonment on motion from a defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Upon such motion, a court may modify a defendant's sentence "after considering the factors set forth in § 3553(a) to the extent applicable" if it finds "extraordinary and compelling reasons to warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). Each of these factors is met here.

**A. The COVID-19 Pandemic and Mr. Jay's Risk Factors Constitute "Extraordinary and Compelling" Circumstances "Warrant[ing] Immediate Release from Custody."**

This Court may grant Mr. Jay compassionate release and reduce his sentence "if it finds that ... extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). The Sentencing Commission has defined "extraordinary and compelling reasons" to include "a serious physical or mental condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," *see* U.S.S.G. § 1B1.13 cmd. N.1(A)(ii). The numerous medical conditions that Mr. Jay suffers from—conditions that place him at much higher risk of death from COVID-19 relative to the general populace—now constitute just such "a serious physical or mental condition." These include type 2 diabetes, hypertension, and a history of heart disease.

We need not belabor a point this Court itself has made on multiple occasions over the last few weeks. *See, e.g.*, *United States v. Sarkisyan*, No. 15-CR-00234-CRB-15, 2020 WL 2542032, at *2 (N.D. Cal. May 19, 2020) (granting compassionate release where offender was non-violent and suffered from hypertensive heart disease and other conditions despite the lack of confirmed cases at his facility); *United States v. Reid*, No. 17-CR-00175-CRB-2, 2020 WL 2128855, at *3 (N.D. Cal. May 5, 2020) (granting compassionate release because defendant's medical conditions including hypertension were "serious physical or mental condition[s]" in the context of COVID-19); *United States v. Trent*, No. 16-CR-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020), *adhered to,* No. 16-CR-00178-CRB-1, 2020 WL 1812214 (N.D. Cal. Apr. 9, 2020) (granting compassionate release and finding that that "in the context of the COVID-19 pandemic," defendant's medical conditions "render[ed] [him] uniquely vulnerable to serious illness if he contracts COVID-19" and substantially diminished his ability to provide self-care in a small cell where social distancing was impossible); *United States v. Morrison*, No. 18-cr-00238-CRB-1, Dkt. No 72 (N.D. Cal. Apr. 29, 2020). As with these similarly situated defendants, Mr. Jay's severe health issues make him an appropriate candidate for compassionate release.

The Centers for Disease Control lists [redacted] as among the conditions that place individuals "at high-risk for severe illness from COVID-19." *See* CDC, *People*

5

DEFENDANT'S EMERGENCY NOTICE OF MOTION AND MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I) / CASE NO. 3:17-CR-00176-CRB-1

*Who Are at Higher Risk for Severe Illness,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 30, 2020). It further advises that those with Mr. Jay's comorbidities, like [REDACTED] [REDACTED]. *See* CDC, *Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last updated June 2, 2020). This Court has made the same observation. *See Reid*, 2020 WL 2128855, at *3. So have numerous other courts in this district and elsewhere. *United States v. Vo*, No. 15-cr-00310-BLF-2, Dkt. 207, 2020 WL 2300101 (N.D. Cal. May 7, 2020) (granting compassionate release to 74-year-old inmate with hyperlipidemia and hypertension); *United States v. Simpson*, No. 11-CR-00832-SI-3, 2020 WL 2323055 (N.D. Cal. May 11, 2020) (granting compassionate release to 62 year old with asthma and diabetes); *United States v. Connell*, No. 18-cr-00281, 2020 WL 2315858 (N.D. Cal. May 8, 2020) (granting compassionate release to 69 year old inmate at FCI Lompoc who suffers from hypertension, high cholesterol, and pre-diabetes); *United States v. Vo*, No. 15-cr-00310-BLF-2, Dkt. 207, 2020 WL 2300101 (N.D. Cal. May 7, 2020) (hyperlipidemia and hypertension); *Burrill*, 2020 WL 1846788, at *1 (diabetes and high blood pressure); *United States v. Ullings,* No. 1:10-cr-00406, 2020 WL 2394096 (N.D. Ga. May 12, 2020) (hypertension); *United States v. Hunt,* No. 18-20037, 2020 WL 2395222 (E.D. Mich. May 12, 2020) (congestive heart failure and diabetes); *United States v. Foreman,* No. 3:19-cr-62 (VAB) 2020 WL 2315908 (D. Conn. May 11, 2020) (hypertension); *United States v. Quintero,* No. 08-CR-6007L, --- F.Supp.3d ----, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (diabetes, and hypertension); *United States v. Howard,* No. 4:15-CR-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (diabetes); *United States v. Ardila,* No. 3:03-cr-264 (SRU), 2020 WL 2097736 (D. Conn. May 1, 2020) (diabetes, cardiovascular disease, and hypertension); *United States v. Lacy,* No. 15-cr-30038, 2020 WL 2093363 (C.D. Ill. May 1, 2020) (hypertension and diabetes); *United States v. Joling,* No. 6:11-CR-60131-AA, 2020 WL 1903280 (D. Or. Apr. 17, 2020) (hypertension); *United States v. Zukerman,* No. 16-CR.-194 (AT), --- F.Supp.3d ----, 2020 WL 1659880, *2–*3 (S.D.N.Y. Apr. 3, 2020) (diabetes and hypertension); *United States v. York,* No. 3:11-CR-76; 3:12-CR-145, 2019 WL 3241166 (E.D. Tenn. July 18, 2019) (coronary artery disease and diabetes). Mr. Jay's "conditions are, of course, not ones from

which an individual is expected to 'recover' . . . ." *See Burrill*, 2020 WL 1846788 at *3 (citing U.S. Sentencing Guidelines § 1B1.13 cmt. 1(A)(ii)).

Mr. Jay's medical conditions are not his only high-risk characteristic. The CDC has explained that, based on data from China, individuals like Mr. Jay who are above the age of 60 may have a case fatality rate 18 times higher than that of individuals under the age of 40. *See* CDC, *Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last visited May 30, 2020). As this Court has stated, "[w]hen [Mr. Jay was] sentenced, nobody could have predicted that a relatively brief term of imprisonment could be rendered a death sentence by an unprecedented pandemic." *United States v. Osorto,* No. 19-CR-00381-CRB-4, 2020 WL 2323038, at *5 (N.D. Cal. May 11, 2020).

**B. With Full Consideration of the § 3553(A) Factors, Including the COVID-19 Pandemic, Mr. Jay's Time Served Constitutes a Sentence Sufficient, But Not Greater Than Necessary, to Accomplish the Goals of Sentencing.**

Section 3582(c)(1)(A) provides, in relevant part, that courts may reduce [a] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) after considering the factors set forth in section 3553(a) to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A).

Section 3553(a), in turn, directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2). Each of these factors is met here.

**1. "Sufficient but not greater than necessary" and "reflect the seriousness of the offense, … promote respect for the law, and … provide just punishment for the offense."**

The COVID-19 pandemic requires a recalibration when determining when a sentence is "sufficient but not greater than necessary." "To avoid a sentence that was sufficient but no greater than necessary from becoming one immeasurably greater than necessary" requires a reduction in the sentence of vulnerable, low-security inmates like Mr. Jay. *United States v. Park*, No. 16-CR-473 (RA), 2020 WL 1970603 at *5 (S.D.N.Y. Apr. 24, 2020) (emphasis added) (internal citation omitted); *see also United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674 at *3 (D. Md. Apr. 28, 2020) (finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.").

Mr. Jay is set to be released on January 27, 2021, about seven-and-a-half months from now. *See* Au Decl. Ex. C, BOP Inmate Registry Entry for S. Jay. He has already served seventeen months, so his sentence is more than two-thirds complete. We respectfully submit that in light of the changed circumstances arising from the COVID-19 pandemic, serving "most of the original sentence imposed" is "long enough to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes." *See United States v. Rodriguez*, No. 2:03-CR-1627337, 2020 WL 1627331 at *11-*12 (E.D. Pa. Apr. 1, 2020); *see also Sarkisyan*, at *3 (finding this factor satisfied where inmate had five months left in a fifteen-month sentence); *United States v. Tran*, No. CR 08-00197-DOC, 2020 WL 1820520 (C.D. Cal. Apr. 10, 2020) ("the applicable § 3553(a) factors support Defendant's request for compassionate release and that Defendant will not pose a threat to the community. While the Court acknowledges the seriousness of Defendant's offense, Defendant has already served the vast majority of his sentence").

In addition, given Mr. Jay's age, it will be challenging for him to find a new line of work. *See United States v. Jaime*, 235 F. Supp. 3d 262, 265 (D.D.C. 2017) ("the Court is mindful of the potentially devastating collateral consequences of a criminal conviction, including it being an impediment to future employment"). Mr. Jay has also suffered serious deterioration in his health during the time he has been incarcerated, including the amputation of a toe as a result of an infection that occurred while he was in

prison. In sum, while Mr. Jay acknowledges the seriousness of his offense, he has been adequately punished for his conduct.

**2. "Adequate deterrence" and "protect[ing] the public"**

Compassionate release in this case is also consistent with the objectives of deterrence and protecting the public. Mr. Jay was convicted of a non-violent offense, and is now 61 years old, meaning that his risk of recidivism is very low. "Recidivism rates decline relatively consistently as age increases," with the lowest rates for offenders aged 50 and older. U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf at 12, Exhibit 9. Mr. Jay had no criminal history prior to the offenses for which he is incarcerated. *See* Jay Decl. ¶ 2. The offenses for which he was convicted are non-violent crimes, and there would be no basis to view Mr. Jay as a danger to the community should he be granted compassionate release or placed in home detention. Moreover, Mr. Jay's conduct in prison has been exemplary; he has not incurred any disciplinary infractions during the 17 months he has been imprisoned. *See* Jay Decl. ¶ 3.

Further, even if Mr. Jay were to be released before he serves his full term of incarceration, the policy objective of promoting deterrence of others has been fulfilled. Mr. Jay has faced real punishment by being incarcerated far from home, suffering additional severe health issues while incarcerated, and having forfeited his professional livelihood and standing in his community. This punishment is sufficient to deter others who might engage in similar criminal conduct.

The public will also be protected because, if released, Mr. Jay will be subject to a three-year term of supervised release, during which time he will be monitored by the probation office. Moreover, Mr. Jay has lost his ability to continue to perform tax preparation services, so there is no chance that he will engage in conduct of the kind that resulted in his conviction. To the extent the Court feels it necessary, it can also impose part of his term of supervised release to be served under home confinement.

**3. "Needed medical care, or other correctional treatment"**

Granting Mr. Jay's motion would also allow him to obtain needed medical care and other correctional treatment. If released, Mr. Jay will reside at his family's home at [redacted]

9

DEFENDANT'S EMERGENCY NOTICE OF MOTION AND MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I) / CASE NO. 3:17-CR-00176-CRB-1

[REDACTED] *See* Jay Decl. ¶ 5. He will have medical coverage under his wife's employment insurance and will receive medical treatment in the [REDACTED] area with the physicians who treated him prior to incarceration. *Id.* Furthermore, he will receive emotional and financial support from his family, namely, his wife and children who also live at the [REDACTED] address. *Id.*

**C. Both The Number of Tested Cases in Mr. Jay's Facility and Mr. Jay's Immigration Status are Immaterial.**

Although there are presently no confirmed cases of COVID-19 at the Giles W. Dalby Correctional Facility where Mr. Jay is incarcerated, that statistic is not a reason to deny compassionate release. The number of confirmed cases is no better than the testing regimen employed by the prison—and says nothing at all about the likelihood of cases in the future. As Judge Seeborg has noted, "Federal correctional institutions, which had reported zero COVID-19 cases only weeks ago, and despite the steps the BOP has taken to contain the disease within its facilities, are now reporting numerous virus-related deaths." *Burrill*, 2020 WL 1846788, at *2 (citing Ryan Lucas, *'They're All Really Afraid': Coronavirus Spreads In Federal Prisons*, NPR (Apr. 7, 2020), https://www.npr.org/2020/04/07/828319691/they-re-all-really-afraid-coronavirus-spreads-in-federal-prisons)); *see also Sarkisyan*, 2020 WL 2542032, at *2 ("If the Government wishes to argue that early release in this case (or any other case before this Court) is inappropriate because the defendant's facility has no reported cases of COVID-19, that claim must be adequately supported with actual test results from testing conducted by the Bureau of Prisons. This Court does not and will not consider a dearth of testing competent evidence that there are no COVID-19 cases in a given BOP facility."). Media reports and experts have regularly noted the incompleteness of the Bureau of Prison's COVID-19 case tracking. *See, e.g.*, Sadie Gurman, *More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus*, The Wall Street Journal (Apr. 30, 2020), https://www.wsj.com/articles/more-than-70-of-inmates-tested-in-federal-prisons-have-coronavirus-11588252023 (quoting Dr. Ashish Jha, director of Harvard University's Global Health Institute, as saying, "When I hear numbers like that, my thoughts are there is massive under-testing, there are probably thousands of additional people who are infected that they may not have captured yet, and it really feels like a public health crisis in the making.").

10

DEFENDANT'S EMERGENCY NOTICE OF MOTION AND MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I) / CASE NO. 3:17-CR-00176-CRB-1

For that reason, many courts have granted compassionate release to inmates housed in facilities with no confirmed cases. For example, in *United States v. Atkinson*, No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585, at *2-*4 (D. Nev. Apr. 17, 2020), the judge recognized that the realities of prison life make it impossible for medically vulnerable inmates to follow CDC guidelines to protect themselves in the face of COVID-19, *id.* at *4, and therefore granted compassionate release, even though the inmate's facility had no confirmed cases. Similarly, in *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020), a district court in Michigan released a medically vulnerable inmate from FCI Loretto, despite no reported COVID-19 cases at the facility, because he could not adequately protect himself in line with CDC guidelines. *Id*. at *2–3. Other courts have done the same. *See United States v. Washington*, No. 2:07-cr-258, Dkt. No. 529 (E.D. Pa. May 14, 2020); *United States v. Ben-Yhwh*, No. CR 15-00830 LEK, 2020 WL 1874125 (D. Haw. Apr. 13, 2020); *United States v. Asaro*, No. 17-CR-127 (ARR), 2020 WL 1899221 (E.D.N.Y. April 17, 2020) ("absent more information about how much testing the BOP is conducting, it is possible that undetected cases are present in the facility"); *Burrill*, 2020 WL 1846788, at *3–*4 ("Prison conditions mean incarcerated individuals, as well as society as a whole, are safer the more defendants are released.").

It would likewise be inappropriate to deny Mr. Jay compassionate release because of the possibility that he is subject to an immigration detainer and is not a U.S. citizen. No statute prohibits the granting of compassionate release on the basis of a detainer, and other courts have granted compassionate release to inmates who were subject to detainers. *See United States v. Al-Jumail*, No. 12-20272, 2020 WL 2395224, at *7 (E.D. Mich. May 12, 2020) ("It may be that ICE will act on its Detainer against Defendant. However, the matter before this Court is whether Defendant is entitled for a reduction of sentence based on compassionate release."); *Ardila*, 2020 WL 2097736, at *2 (granting compassionate release where inmate was subject to an immigration detainer). The presence of a detainer is also not enumerated by the United States Sentencing Commission as a factor to be considered in determining whether an inmate qualifies for compassionate release. USSG § 1B1.13 cmt. n.1. Similarly, not being a citizen or national of the United States is no bar to compassionate release: Like the presence of a detainer, it is not mentioned in the statute, the Sentencing Guidelines, or the Bureau of Prisons' own program statement as a factor to be considered. *See* Federal Bureau of Prisons, *Compassionate*

*Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)* (Aug. 12, 2013), https://www.bop.gov/policy/progstat/5050_049_CN-1.pdf at Program Statement p. 10; *United States v. Bennett*, No. 05 CR. 1192-1 (NRB), 2020 WL 2539077, at *1 (S.D.N.Y. May 18, 2020) (granting compassionate release to a British citizen).

## IV.     CONCLUSION

The Court should reduce Mr. Jay's sentence and release him to protect his life.  Mr. Jay cannot adequately protect himself from COVID-19 at Giles W. Dalby Correctional Facility, and he will almost certainly not receive adequate care if infected.  Mr. Jay is slated to be transferred to supervised release in less than eight months.

For the foregoing reasons and any others that the Court deems appropriate and just, Subhash Jay respectfully requests that the Court grant reduction in sentence to time served and amend the conditions of supervised release as requested.

Dated:  June 5, 2020                                                              Respectfully submitted,

DURIE TANGRI LLP

By:         */s/ Benjamin B. Au*
BENJAMIN A. AU
GALIA Z. AMRAM
RAGHAV K. KRISHNAPRIYAN

Attorneys for Defendant SUBHASH JAY

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2020 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Benjamin B. Au*
BENJAMIN B. AU